*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PETER TOLODZIECKI,

    Plaintiff-Appellant/Cross-Appellee,

v

THE PLACE TO BEE, INC., doing business as
BROKEN WHEEL RANCH, and DUANE
VANDERARK,

    Defendants-Appellees/Cross-
    Appellants,

and

RONALD RUTKOWSKI, MID MICHIGAN
CONTRACTOR, LLC, JONBUILT
CONSTRUCTION, LLC, and THE CRANE GUY,
LLC,

    Defendants.

UNPUBLISHED
July 13, 2026
8:51 AM

No. 367595
Newaygo Circuit Court
LC No. 2021-020768-NO

Before: ACKERMAN, P.J., and REDFORD and FEENEY, JJ.

PER CURIAM.

  Plaintiff Peter Tolodziecki appeals the dismissal of his negligence action against defendants The Place to Bee, Inc. (TPTB) and Duane VanderArk.[1]  Plaintiff asserts that the trial court erred by dismissing his claim under the "common work area" doctrine, as well as his claim for liability under the Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq*. Defendants argue on cross-appeal that some of the trial court's rulings in plaintiff's favor on

---

[1] Plaintiff previously stipulated to the dismissal of defendants Mid-Michigan Contractor LLC; JonBuilt Construction, LLC; and Ronald Rutkowski.  He later stipulated to the dismissal of his claim against The Crane Guy, LLC, to facilitate this appeal.

subsidiary issues were incorrect. We vacate the trial court's grant of summary disposition and remand for further proceedings.

## I. BACKGROUND

This action arises out of injuries suffered by plaintiff on September 26, 2019, when inadequately braced roof trusses fell on him during the construction of a large residential home or lodge for VanderArk outside Big Rapids. The building is on 800 acres of property owned by TPTB. VanderArk is the president, secretary, treasurer, and director of TPTB.

Defendant Rutkowski, a licensed builder and friend of VanderArk, applied for and obtained the permit for the project. JonBuilt was responsible for framing the home and setting the trusses, and it hired The Crane Guy to position the roof trusses. Mid-Michigan crew members regularly worked on VanderArk's projects and, on the date of the accident, were helping with the truss installation.

Plaintiff worked with five other workers on various projects for VanderArk before the house was built. Plaintiff was paid by Mid-Michigan. Nick Matzen, the owner of Mid-Michigan, confirmed that plaintiff worked for Mid-Michigan and provided plaintiff a 1099 Form. Matzen was not a licensed builder. Seventy to seventy-five percent of Mid-Michigan's business was performed at TPTB on projects for VanderArk.

On the date of the accident, the Mid-Michigan crew was assisting JonBuilt with the trusses. Two JonBuilt workers were standing on the walls and asked plaintiff and the other Mid-Michigan crew members working on the second floor to pass up materials. The JonBuilt workers were bracing the trusses, as was Matzen, who was on top of the trusses, bracing across the top and tying them together.

After the workers installed about two-thirds of the trusses from the south end to the north end of the building, JonBuilt employees observed they had installed a standard truss at one point where a fire-break truss was needed. They had installed four or five trusses beyond where the fire-break truss should have gone, and JonBuilt's owner decided to remove the regular truss to enable the installation of the fire-break truss.

The crane operator was concerned about the bracing for the trusses. He called to the workers, saying they should probably add more bracing, but they did not respond. Plaintiff was standing under the trusses to hand up materials. None of the workers were wearing hard hats.

JonBuilt's owner removed the nails that secured the truss, and the crane operator lifted it to make room for a replacement fire-break truss. It is unclear whether the removed truss hit something, was caught by a gust of wind, or fell for another reason, but it collided with the previously installed trusses and they fell like dominoes. The parties do not dispute that the trusses would not have fallen had they been properly braced.

Matzen was on top of the trusses and was thrown when the trusses fell. He hurt his elbow, knee, and foot, and his son, who was near plaintiff, hurt his neck. Plaintiff was hit on the head and also suffered injuries to his spine, shoulder, arm, and knee. Plaintiff tried to work after the accident, but the pain became too much, so he was let go, and he has not worked since.

Plaintiff brought suit, alleging entitlement to workers' compensation benefits under the WDCA, negligence under the common work area doctrine, employer negligence, and general negligence. Rutkowski answered and denied that he was the general contractor for the project. Mid-Michigan's answer indicated that, at VanderArk's request and for efficiency purposes, it agreed to hire plaintiff because there were six people working on the project, and it merely served as an agent between VanderArk and plaintiff to reduce bookkeeping. Mid-Michigan also asserted that Rutkowski was the general contractor.

Defendants eventually moved for summary disposition under MCR 2.116(C)(10), contending that plaintiff had not shown the requisite elements of the common work area doctrine. Defendants asserted that Matzen was the general contractor. Defendants also argued, in the alternative, that plaintiff could not show any issue of fact existed and that they did not retain control of the project. Further, defendants said the third element of the common work area doctrine was not met because the danger was not evident, and only four workers, not a significant number, were on the second floor when the trusses fell.

Defendants also argued that they were not liable for workers' compensation benefits to plaintiff. They contended that they did not satisfy the definition of an "employer" under the WDCA because neither had any employees, and the relevant statute requires at least three employees. They also argued that, because Matzen hired plaintiff, supervised plaintiff, and paid plaintiff, Mid-Michigan was plaintiff's employer, not defendants.

Plaintiff answered that the common work area doctrine applies to this case and that defendants were liable either as the general contractor or under the retained control doctrine. Plaintiff cited testimony from VanderArk regarding the amount of control he exerted over the project, as well as testimony from Matzen, other subcontractors, and his own testimony. He also pointed to testimony that the danger was readily observable and avoidable, and that a significant number of workers were endangered because at least 10 employees of three subcontractors were at risk.

In its order, the trial court acknowledged caselaw holding that a property owner typically is not liable for a subcontractor's negligence, as well as the relevant exception here: the "common work area" doctrine. Under the common work area doctrine, a property owner or general contractor may be liable to guard against observable, avoidable dangers in common work areas. The danger must create a high degree of risk to a significant number of workers in a common area.

The trial court ruled that a question of fact existed regarding whether VanderArk was the general contractor. The record contained conflicting evidence that either Rutkowski, Matzen, or VanderArk was the general contractor. The court also concluded a question existed regarding whether VanderArk retained sufficient control over the project given his involvement in the project.

As to the risk element, the court noted that setting trusses carries a high risk, especially where proper bracing was not in place, as did cutting the bracing before the entire arrangement was secured. Several workers were also at risk in a common work area shared by various subcontractors. The court concluded those elements of the common work area doctrine were satisfied, leaving only the element of a readily observable and avoidable danger.

The court reasoned that plaintiff had not shown VanderArk failed to act to guard against readily observable and avoidable dangers, explaining that VanderArk had not been present when the trusses fell, and the inadequate bracing would have been apparent only if he had been on the site. The court also noted JonBuilt workers had knowledge regarding trusses that was superior to that of VanderArk. Given plaintiff's failure to prove the second element, the court granted defendants' motion for summary disposition on plaintiff's negligence claim.

The trial court then ruled on plaintiff's claim under the WDCA, concluding that plaintiff was a Mid-Michigan employee because Mid-Michigan paid his wages. The court rejected plaintiff's reliance on MCL 418.171, finding that the statute was inapplicable to these facts. Finally, the court rejected plaintiff's contention that he had a private cause of action under the WDCA and that VanderArk was personally liable under the WDCA.

The court later entered a stipulated final order of dismissal. This appeal followed.

## II. STANDARDS OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Yellow Tail Ventures, Inc v City of Berkley*, 344 Mich App 689, 699; 1 NW3d 860 (2022). A motion for summary disposition brought under MCR 2.116(C)(10) tests the complaint's factual sufficiency. *Charter Twp of Pittsfield v Washtenaw Co Treasurer*, 338 Mich App 440, 449; 980 NW2d 119 (2021). The moving party must identify any issues where no genuine issue of material fact exists. *Id.* The court must examine the "affidavits, pleadings, depositions, admissions, and other evidence" submitted with the motion, and must do so in a light most favorable to the nonmoving party. *Id.* (citation omitted). The opposing party may not rely on only allegations or denials, but must provide evidence with particular facts to demonstrate that a genuine issue exists for trial. *Id.*

Also, this Court reviews questions of statutory interpretation de novo. *Smith v Town & Country Props II, Inc*, 338 Mich App 462, 473; 980 NW2d 131 (2021). This Court seeks to determine and implement legislative intent. *Id.* Judicial construction is unnecessary where the language of a statute is plain and unambiguous. *McCormick v Carrier*, 487 Mich 180, 195; 795 NW2d 517 (2010). Finally, courts should liberally construe the WDCA in favor of granting benefits given its aim to provide a remedy for workers. *Belcher v Ford Motor Co*, 333 Mich App 717, 724; 963 NW2d 423 (2020).

## III. DISCUSSION

### A. COMMON WORK AREA DOCTRINE

Michigan public policy establishes that subcontractors are responsible for safeguarding their employees' welfare on a job site. *Shawl v Spence Bros, Inc*, 280 Mich App 213, 234; 760 NW2d 674 (2008). The general rule is therefore that general contractors are not liable for a subcontractor's negligence. *Hughes v PMG Bldg, Inc*, 227 Mich App 1, 5; 574 NW2d 691 (1997). That said, it is "part of the business of a general contractor to assure that reasonable steps within its supervisory and coordinating authority are taken to guard against readily observable, avoidable dangers in common work areas which create a high degree of risk to a significant number of workmen." *Funk v Gen Motors Corp*, 392 Mich 91, 104; 220 NW2d 641 (1974), overruled in part

on other grounds by *Hardy v Monsanto Enviro-Chem Sys, Inc*, 414 Mich 29 (1982). A general contractor who fails to satisfy that duty therefore remains liable to a subcontractor's employees for injuries resulting from that failure. Moreover, while a property owner is not ordinarily liable, "an owner who acts in a superintending capacity and has knowledge of high degrees of risk faced by construction workers" bears "responsibility for failing to require observance of reasonable safety precautions." *Funk*, 392 Mich at 106-107 (footnote omitted). In such circumstances, the "owner steps into the shoes of the general contractor and is held to the same degree of care as the general contractor." *Ormsby v Capital Welding, Inc*, 471 Mich 45, 49; 684 NW2d 320 (2004).

The common work area exception is said to have four elements: "(1) the defendant, either the property owner or general contractor, failed to take reasonable steps within its supervisory and coordinating authority (2) to guard against readily observable and avoidable dangers (3) that created a high degree of risk to a significant number of workmen (4) in a common work area." *Id*. at 57. That said, as this case illustrates, the elements can themselves be further subdivided into constituent components. The trial court concluded that there were genuine issues of material fact regarding elements (1), (3), and (4), but granted summary disposition to defendants after concluding there was no question of fact as to element (2). Plaintiff challenges the trial court's grant of summary disposition under element (2), while on cross-appeal, defendants argue the trial court erred in recognizing genuine issues of material fact under the other elements of the test.[2]

## 1. GENERAL CONTRACTOR

The first element of the common work area doctrine requires a plaintiff to show that "the defendant, either the property owner or general contractor, failed to take reasonable steps within its supervisory and coordinating authority." Although stated as one element, this element can be further parsed into three sub-elements: (1) the defendant was a general contractor or the property owner who retained control, (2) the defendant failed to take reasonable steps regarding safety, and (3) those mitigating steps were within the defendant's supervisory and coordinating authority. Defendants do not dispute that they did not take steps regarding safety or assert that the steps plaintiff would have had them take were beyond their control. Instead, they maintain they were neither the general contractor nor an owner who retained control, and thus were not responsible for safety. We conclude the trial court correctly ruled that there is a question of fact regarding defendants' status as general contractor or owner-in-control.

In viewing the facts, we consider them in the light most favorable to plaintiff, the nonmoving party. See *Foreman v Foreman*, 266 Mich App 132, 146 n 1; 701 NW2d 167 (2005). The record reflects that VanderArk selected certain subcontractors, visited the site to speak with them, paid them directly, provided heavy equipment, and made certain decisions. At the same time, VanderArk identified Matzen as the general contractor, as did JonBuilt's owner. But Matzen did not pay the other subcontractors, charged VanderArk only the hourly rate for his crew without

---

[2] Defendants did not need to file a cross-appeal to make these arguments, because "an appellee need not file a cross-appeal in order to argue an alternative basis for affirming the trial court's decision, even if that argument was considered and rejected by the trial court." *Kosmyna v Botsford Community Hosp*, 238 Mich App 694, 696; 607 NW2d 134 (1999).

any markup, and believed Rutkowski was the general contractor. Rutkowski, however, denied he was the general contractor; he identified VanderArk as the general contractor.

As stated in *Candelaria v BC Gen Contractors, Inc*, 236 Mich App 67, 76; 600 NW2d 348 (1999): "At a minimum, for an owner or general contractor to be held directly liable in negligence, its retention of control must have had some *actual effect* on the manner or environment in which the work was performed." Given VanderArk's involvement in the project, as illustrated by the deposition testimony of Rutkowski, Matzen, and plaintiff, among others, VanderArk's input had an actual effect on the manner in which the workers performed the construction. We conclude that the trial court did not err in ruling that a genuine issue of material fact regarding VanderArk's role in the project precluded summary disposition as to this element.

## 2. READILY OBSERVABLE DANGER

Plaintiff contends on appeal that the trial court erred in determining that VanderArk's absence from the worksite on the accident date excused him from liability under the readily observable danger element of the common work area doctrine. We agree and vacate the trial court's ruling on this element and its grant of summary disposition to defendants.

As with the first element of the common work area doctrine, element two can also be broken into sub-elements, requiring that the danger be both (1) observable and (2) avoidable. The parties do not dispute that the danger was avoidable. The question then becomes whether the danger was readily observable.

The trial court ruled that the danger was not readily observable because VanderArk was not at the worksite on the date of the injury, and the subcontractors on site were more knowledgeable about how to properly install trusses. That reasoning was erroneous in two respects. First, it is irrelevant whether a knowledgeable subcontractor was present. The common work area doctrine relates to the duties of general contractors. "[T]he general contractor's duty is to take reasonable steps to ensure that those safety precautions are taken" "[i]n cases in which normal safety precautions can reduce a hazardous condition so that it no longer creates a high degree of risk to workers." *Latham v Barton Malow Co*, 480 Mich 105, 112-113; 746 NW2d 868 (2008). That duty is not satisfied or discharged simply because of the presence of a subcontractor.

A general contractor's absence from the site when the accident occurs is not, by itself, dispositive. Our Supreme Court has observed that dangers at a construction site may include "any number of open hazards that are evolving by the moment," *Ghaffari v Turner Constr Co*, 473 Mich 16, 28; 699 NW2d 687 (2005), which suggests that the general contractor's responsibility for worksite safety is not contingent on the contractor's physical presence. The purpose of the common work area doctrine is to "render it more likely that the various subcontractors being supervised by the general contractor will implement or that the general contractor will himself implement the necessary precautions and provide the necessary safety equipment in those areas." *Funk*, 392 Mich at 104. That purpose is not served by relieving a general contractor of liability if he absents himself from the worksite. Such a rule would encourage them to avoid the worksite to escape potential liability. Consequently, the trial court erred in ruling that VanderArk escaped liability because he was not on site.

Defendants still maintain that the hazard of inadequately braced trusses was not "readily observable." In the case in which the common work area doctrine was first recognized, the safety hazard "was obvious to even the most casual observer," *Funk*, 392 Mich at 103, which defendants argue is not satisfied here. They maintain that the bracing instructions were complex and required expertise to install, and therefore a layperson could not have readily observed the danger. For his part, plaintiff argues that defendants erroneously assert that a "readily observable" hazard is equivalent to an "open and obvious" defect. It is certainly true that "[t]he open and obvious doctrine has no applicability to a claim under the common work area doctrine." *Ghaffari*, 473 Mich at 31. But "[w]e need not address an issue that was not the basis of the trial court's decision," *Aguirre v Dep't of Corrections*, 307 Mich App 315, 326; 859 NW2d 267 (2014), so we do not resolve this argument. It is enough to conclude that the trial court's rationale for granting summary disposition as to this element—and therefore plaintiff's claim—was insufficient, although our ruling is without prejudice to defendants renewing on remand their arguments about whether this hazard was "readily observable."

### 3. SIGNIFICANT NUMBER OF WORKERS

Defendants challenge the trial court's ruling that plaintiff satisfied the third element of the common work area doctrine: a high risk to a significant number of workers. Defendants do not dispute that the circumstances carried high risk for workers, so the only aspect of this element in dispute is whether a significant number of workers were at risk.

Caselaw does not specify the minimum number of workers required to constitute "a significant number." That said, the Michigan Supreme Court has held that two to six employees of a subcontractor exposed to danger in a common work area did not constitute a significant number of workers for purposes of the common work area doctrine. *Alderman v J.C. Dev Communities, LLC*, 486 Mich 906, 906 (2010).

Defendants claim that only six workers were in danger,[3] but they do not account for another member of Mid-Michigan's crew on the second floor.[4] Also, three other workers were on the ground, for a total of 10 workers.[5] Defendants, however, contend that only six of those workers were at risk given that the trusses did not fall onto the workers on the ground; the trusses fell only on the second floor.

We decline to accept defendants' narrow view of the element of risk. Rather than acknowledging that the workers on the ground were at risk of being injured, defendants apply an after-the-fact analysis to conclude that workers on the ground were not at risk because the trusses fell onto the second floor of the house. A reasonable person could find that the workers on the ground were at risk from the very danger at issue: falling objects (trusses) that were inadequately

---

[3] This includes a four-man crew from Mid-Michigan (plaintiff, Matt Gravelin, Matzen, and Matzen's son Harley) as well as two JonBuilt employees (Jonathan VanVeelen and Josh French).

[4] Namely, Mike Manciu.

[5] Namely, Jeff Johnson from JonBuilt; the crane operator, Lance Sjoerdsma; and another Mid-Michigan crew member, Larry Anderson.

braced. And even if workers on the ground were excluded, defendants have no explanation for why a seventh worker on the second floor would not take this case outside the rule from *Alderman*.

Although this issue is a close one, viewing the evidence in a light most favorable to plaintiff, a genuine issue of material fact exists whether a total of 7 to 10 workers were exposed to the risk of the falling trusses. At least seven workers were definitely at risk. The total of 7 to 10 workers in this case is greater than the six workers at risk in *Alderman*. Accordingly, the trial court did not err in ruling that plaintiff's case should survive summary disposition on this element.

## 4. COMMON WORK AREA

The fourth and final element of the common work area doctrine is its namesake: whether the injury occurred in a "common work area."[6] Defendants argue that "[n]o one moved for summary disposition on the fourth element of the common-work-area doctrine," but "the trial court appeared to resolve it in [plaintiff's] favor," which they contend was erroneous.

The nature of the trial court's decision is not entirely clear on this point. In resolving defendants' motion for summary disposition, the court wrote that the area "was clearly a common work area" and "that elements 3 and 4 are met," but on reconsideration, it said that "there was no genuine issue of material fact as to the other elements of the common work area doctrine." Given that only defendants and not plaintiff moved for summary disposition, we do not construe the trial court's ruling as a judgment as a matter of law on this prong in plaintiff's favor. In context, we believe the trial court recognized no more than a question of fact on this element and granted summary disposition to defendants because of its erroneous imposition of a physical-presence requirement under the second element of this doctrine. Regardless of what the trial court meant, we are vacating its grant of summary disposition as to plaintiff's common-work-area count.

We conclude that there is at least a question of fact about whether the workspace was a common work area. "A common work area, for the purposes of the common work area doctrine, is characterized by a space where 'employees of two or more subcontractors will eventually work,' even if not simultaneously." *El-Jamaly v Kirco Manix Constr, LLC*, 514 Mich 263, 289 n 9; 22 NW3d 377 (2024). The concept is "an effort to distinguish between a situation where employees of a subcontractor were working on a unique project in isolation from other workers and a situation where employees of a number of subcontractors were all subject to the same risk or hazard." *Hughes*, 227 Mich App at 8. The record is replete with evidence that employees of two or more subcontractors were at least arguably working in the same space and subject to the same risk or hazard.

---

[6] "It is potentially confusing and, indeed, may have misled some courts, that a test with four elements has been referred to by only one of its elements—the 'common work area.' What is commonly referred to as the 'common work area doctrine,' however, has four separate elements, *all* of which must be satisfied before that doctrine may apply." *Ormsby*, 471 Mich at 59 n 11.

## B. WORKERS' COMPENSATION

Separately from the parties' dispute over defendants' common-law tort liability,[7] plaintiff also contends that the trial court erred in granting summary disposition on the issue of workers' compensation benefits. He raised two theories: (1) that defendants were his direct employer and (2) that defendants were his "statutory employer" under the WDCA. The trial court rejected both theories, having concluded that plaintiff "was an employee of Mid-Michigan exclusively and not an employee of TPTB or VanderArk" and that the statute establishing the "statutory employer" theory of liability, MCL 418.171, was "inapplicable to the facts of this case." We conclude that neither aspect of this analysis was adequate and vacate the trial court's judgment.

### 1. GENERAL PRINCIPLES

Employers subject to the WDCA must carry workers' compensation insurance from an authorized insurer or self-insure. MCL 418.611(1). When an employer violates this requirement, an employee "shall be entitled to recover damages from the employer in a civil action because of an injury that arose out of and in the course of employment." MCL 418.641(2). As a result, "[w]hen an employer under the act has failed to comply with the coverage requirements of MCL 418.611, the WDCA provides for . . . liability in tort for additional damages." *Walrath v Witzenmann USA LLC*, 320 Mich App 125, 134; 904 NW2d 875 (2017). Accordingly, if (1) plaintiff was an employee under the WDCA, (2) defendants were plaintiff's employer, and (3) defendants were subject to the WDCA, defendants should have provided workers' compensation insurance. The parties do not appear to dispute that plaintiff met the definition of an employee. MCL 418.161(*l*), (n).

The WDCA also offers limited protection to the employees of subcontractors that lack adequate workers' compensation insurance in the form of a "statutory employer." Under that provision, a worker injured while working for an uninsured contractor may recover benefits from a "statutory employer," also referred to as a principal, if the statutory requirements are satisfied. The relevant provision provides:

> If any employer subject to the provisions of this act, in this section referred to as the principal, contracts with any other person, in this section referred to as the contractor, who is not subject to this act or who has not complied with the provisions of section [MCL 418.611], and who does not become subject to this act or comply with the provisions of section 611 prior to the date of the injury or death for which claim is made for the execution by or under the contractor of the whole or any part of any work undertaken by the principal, *the principal shall be liable to pay to any person employed in the execution of the work any compensation under this act which he or she would have been liable to pay if that person had been immediately employed by the principal.* [MCL 418.171(1) (emphasis added).]

---

[7] We express no opinion on whether or how plaintiff's claim under the common-work-area doctrine is affected by the WDCA's exclusive remedy provision. See MCL 418.131(1).

In other words, when an employer acts as a "principal" when contracting for work with an independent contractor, § 171 imposes an employment relationship on the principal and the employee for the purpose of workers' compensation benefits if and only if such a relationship does not otherwise exist. *McQueer v Perfect Fence Co*, 502 Mich 276, 288-292; 917 NW2d 584 (2018). Section 171 provides a "safety net" to shield employees of contractors without adequate workers' compensation insurance. *Id*. at 290.

As a result, for plaintiff to maintain a statutory employer claim against defendants, (1) plaintiff must be an employee under the WDCA, (2) defendants must *not* be his direct employer, (3) plaintiff's direct employer must be inadequately insured, (4) defendants must be an "employer subject to the provisions of this act," and (5) defendants must have rendered themselves a "principal" by contracting with the inadequately insured "contractor" who directly employed plaintiff. Once again, the parties do not appear to dispute that plaintiff was an employee under the WDCA. They also seem not to dispute that, *if* Mid-Michigan were plaintiff's direct employer, it was inadequately insured. They also apparently do not dispute that defendants contracted with Mid-Michigan. But as with the direct employer claim, they dispute whether defendants were plaintiff's direct employer, as well as whether defendants were "subject to the provisions of this act."

## 2. TRIAL COURT RULING

The trial court did not specifically rule on most of the required aspects of these claims. Instead, as to plaintiff's direct employer claim, it held that plaintiff "was an employee of Mid-Michigan exclusively and not an employee of TPTB or VanderArk."

But the record reflects disputed facts regarding which entity was plaintiff's employer. Taking the facts most favorably to plaintiff, plaintiff worked daily at the Broken Wheel Ranch, performing different tasks at VanderArk's ultimate direction. The record does not reflect that plaintiff worked on any of the jobs Mid-Michigan did for clients other than VanderArk. Plaintiff said VanderArk determined his hourly wage, and VanderArk directed him to leave the premises on his last day. Granted, plaintiff negotiated his employment with Matzen, Mid-Michigan paid his wages, and Mid-Michigan provided his 1099 Form for taxes. Yet in Mid-Michigan's answer to the complaint, it said it hired plaintiff at VanderArk's request and was paying plaintiff for efficiency purposes. Mid-Michigan denied that it supervised plaintiff or managed his work. Given the above, the trial court improperly concluded that Mid-Michigan was plaintiff's employer. A question of fact remains whether plaintiff worked directly for defendants.

As to plaintiff's statutory-employer claim, the trial court simply held that MCL 418.171 was "inapplicable to the facts of this case." The trial court reasoned that § 171 "applies when a contractor (principal) hires another contractor (contractor) who is either not covered by the [WDCA] or is covered but doesn't have workers compensation insurance, and an employee of the contractor is injured on the job." But that is precisely what is alleged here. We therefore do not see how that rationale renders the statute "inapplicable to the facts of this case."

Because the trial court's rationale for granting summary disposition to defendants on plaintiff's WDCA claim is not legally supportable, we vacate its grant of summary disposition. That we are vacating the grant of summary disposition is not to say that the trial court may not

grant summary disposition after further discovery or motion practice on remand. To do so, however, it will need to base its decision on what appears to be the only remaining question[8] on remand: whether defendants are "employers" under the WDCA. The WDCA "contains three separate provisions that impose liability on 'employers' with different degrees of specificity in defining that word." *Viele v DCMA Int'l, Inc*, 211 Mich App 458, 464; 536 NW2d 276 (1995). Those provisions are, respectively, MCL 418.111, MCL 418.115, and MCL 418.151. Any grant of summary disposition on plaintiff's WDCA claim will need to be premised on plaintiff's inability to show that defendants come within one of these provisions that set out the scope of the WDCA's applicability.

## IV. CONCLUSION

In conclusion, we hold the trial court's rationale for granting summary disposition to defendants on plaintiff's common-work-area claim—that VanderArk was not present at the job site—was inadequate to justify summary disposition. We also reject defendants' arguments that the remaining elements of the common work area doctrine independently support affirmance, vacate the grant of summary disposition on this claim, and remand without prejudice to defendants renewing their argument that the hazard was not readily observable. As to plaintiff's direct-employer WDCA claim, we conclude that there is a question of fact about whether defendants employed plaintiff, and the trial court therefore erred in granting summary disposition on this basis as to plaintiff's direct-employment WDCA claim. As to plaintiff's statutory-employer WDCA claim, we conclude that the trial court's declaration that MCL 418.171 is "inapplicable to the facts of this case" is not an adequate basis for granting summary disposition. We therefore vacate its grant of summary disposition as to plaintiff's WDCA claims as well and remand for further proceedings not inconsistent with this opinion.

/s/ Matthew S. Ackerman
/s/ James Robert Redford
/s/ Kathleen A. Feeney

---

[8] As noted, the parties do not appear to dispute several of the requirements involved in plaintiff's WDCA claims. And, since MCL 418.171(1) "creates a tripartite employment among the principal, the contractor, and the contractor's employees," *McQueer*, 502 Mich at 288, and we have already held that there is a question of fact whether defendants were plaintiff's direct employer, the requirement that defendants *not* be plaintiff's direct employer for statutory-employer liability is therefore not susceptible to summary disposition.

-11-